**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Federal Trade Commission, | ) | **CASE NO. 16 CV 228** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Chemence, Inc., | ) | **Order** |
| | ) | |
| Defendant. | ) | |


**INTRODUCTION**

This matter is before the Court upon Non-Party Gorilla Glue Company's Motion for a Protective Order (Doc. 15), Non-Parties Adhesive Systems, Inc. and Royal Adhesives and Sealants LLC's Motion to Protect their Confidential and Trade Secret Information (Doc. 21), and Non-Party Toagesei America, Inc.'s Motion for Protective Order (Doc. 28). This case arises under the Federal Trade Commission Act ("FTC Act"). For the reasons that follow, the motions are GRANTED.

**FACTS**

In 2014, the FTC investigated several cyanoacrylate glue distributors and manufacturers

regarding "Made in America" claims on their products. Cyanoacrylates are strong, fast-acting

adhesives, also known as "power glues" or "superglues," with industrial, medical, and household

uses. (Compl. at ¶ 8). During the course of the investigation, the companies provided certain

confidential and trade secret information to the FTC, with the understanding that the information

would be kept confidential by the FTC. (*See, e.g.,* Non-Party Gorilla Glue Co.'s Mot., Ragland

Decl. ¶ 3). For example, Non-Party Gorilla Glue Company submitted non-public documents

regarding its suppliers, formulations of products, and marketing. (*Id.* ¶¶ 6-9). According to

Gorilla Glue, this information is highly sensitive, confidential business information that is not

known to the public or to Gorilla Glue's competitors. Gorilla Glue considers the information to

be trade secrets and derives competitive value from its secrecy. (*Id.*). Other manufacturers

submitted similarly confidential information in accordance with FTC rules regarding

confidentiality. (*See, e.g.,* Non-Party Toagosei America, Inc.'s Mot. at 3); 15 U.S.C. § 57b-2(f).

Defendant Chemence, Inc. advertises, sells, and distributes cyanoacrylate glue products

to consumers. On February 1, 2016, the Federal Trade Commission filed this lawsuit against

Chemence, alleging that Chemence has violated the FTC Act by engaging in "unfair or deceptive

acts or practices affecting commerce" with respect to its "Made in the USA" labels. (Compl. ¶¶

15, 17-22). In its discovery requests, Chemence has asked the FTC to produce the documents

that Chemence's competitors submitted to the FTC during the 2014 investigation. For example,

Chemence's First Request for Production of Documents contains the following request for any

documents including, referring to, or evidencing the FTC's communications with and

enforcement actions against Gorilla Glue:

    14. Any documents including, referring, or evidencing communications between

the FTC and Gorilla Glue Company, and its affiliated entities, officers, directors, employees, agents, representatives and attorneys, regarding superglues and cyanoacrylates; and

23. Any documents including, referring or evidencing any enforcement actions by the FTC against gorilla Glue Company, and its affiliated entities, officers, directors, employees, agents, representatives and attorneys, regarding superglues and cyanocrylates.

Chemence propounded similar requests to the FTC regarding Toagesei America, Inc., Adhesive Systems, Inc., and Royal Adhesives and Sealants LLC. (*See* Chemence's First Request for Prod. of Docs. 13, 15, 16, 22, 24, 25).

The FTC informed the affected companies that Chemence had issued the document requests and provided each an opportunity to object. The companies raised their objections to disclosure with the FTC and asked that the FTC refrain from producing the documents until the matter was resolved with Chemence or by court order. To protect their interests in the confidential information, the companies moved to intervene in this action, which this Court allowed (hereinafter, Gorilla Glue, Toagosei America, Inc., Adhesive Systems, Inc., and Royal Adhesives and Sealant, collectively, "Intervenors"). Discussions with Chemence did not resolve the dispute, and the Intervenors thereafter filed the motions for protective order now pending before the Court. Chemence opposes the motions. The FTC has agreed not to produce the documents pending the Court's ruling on the motions. It takes no position on the Intervenors'

3

motions for protective orders but has submitted a notice regarding Chemence's opposition brief (Doc. 38). In the notice, the FTC disputes a number of the arguments that Chemence raises in its brief.

### LAW AND ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) sets forth the permissible scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under Rule 26(c), any person from whom discovery is sought may move for a protective order. Rule 26(c)(1)(G) addresses discovery of trade secret or other confidential information and states that, where "good cause" exists, a court may issue a protective order requiring that such information "not be revealed or be revealed only in a specified way." It is within a district court's sound discretion to determine whether confidential information is relevant and whether the need for the information outweighs the harm of disclosure. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010) (quotations omitted). If the court determines that the information is relevant and necessary, "the appropriate safeguards that should attend their

4

disclosure ... are also a matter within the trial court's discretion." *Id.* The party seeking discovery of the confidential information bears the burden of showing that it is relevant to the issues in the action. *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, 2011 WL 5835020, at *4 (S.D. Ohio Nov. 18, 2011).

Here, Chemence does not dispute that the Intervenors are competitors. While it makes a vague and unsupported claim that the Intervenors have failed to "identif[y] why any one specific document is proprietary and the steps taken to keep it confidential," Chemence opposes the Intervenors' motions primarily on the basis that the information that it seeks in the discovery requests at issue is relevant and necessary.

As an initial matter, the Court finds that the Intervenors have established that the information at issue is confidential, trade secret information. The information relates to such confidential and trade secreted matters as suppliers, customers, formulations of products, marketing, and sales information. (*See, e.g.,* Toagosei America's, Inc.'s Reply, Ex. 1, Ohashi Dec. ¶ 2; Gorilla Glue Mot., Ex. 1, Ragland Dec. ¶¶ 3, 6-9; ASI and Royal Adhesives and Sealants LLC's Reply, Ex. 1, Letter from Baniak to Ostrum, dated December 2, 2014). The Intervenors derive competitive value from the information and take efforts to keep it confidential. Indeed, the Intervenors produced the information to the FTC during the 2014 investigation pursuant to the FTC's confidentiality rules, 15 U.S.C. § 57b-2(f), and they all marked the information as confidential. (*See* Ohashi Dec. ¶ 2, Ragland Dec. ¶¶ 6-9; Baniak Letter).[1]

---

[1]    Chemence's argument that the Intervenors' motions should be denied because they have not produced a confidentiality log identifying the documents being withheld is also not well-taken. (*See* Chemence's Br. in Opp. at 2). Chemence has

5

Chemence argues that the information is relevant to the FTC's lawsuit against it because it will show that the FTC has applied inconsistent standards in pursuing "Made in the USA" claims against different companies. According to Chemence, the FTC gave the Intervenors a "free pass" by "approving their U.S. origin claims as long as they make certain disclaimers," but now it is applying a more stringent standard to Chemence. (Chemence Br. in Opp. at 2). It also argues that the information is relevant and necessary because the FTC has never promulgated rules or issued clear standards about the use of "Made in the USA" claims on products and that "[i]n the absence of clear legal standards and proof that Chemence violated a rule made by the FTC, the FTC cannot prevail." (*Id.*) Both of these arguments are without merit.

The FTC's lawsuit concerns *Chemence's* actions, not its competitor's actions. The FTC initiated this action under Sections 5(a) and 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 45(a); 15 U.S.C. § 53(b). (Compl. ¶ 1). Section 5(a) prohibits "unfair or deceptive acts or practices in or affecting commerce," and Section 13(b) allows the FTC to seek a permanent injunction against a company where it believes that the company is violating a law that the FTC enforces. To establish a Section 5 violation, "the FTC must demonstrate that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 6th Cir. 2014). A representation is material if it is likely to affect a consumer's decision to buy a product or service. *Id.* at 631. To determine if a representation is

---

cited no authority for requiring such a log; moreover, the information is being requested of the FTC–not the Intervenors–so the Intervenors would not know exactly what items the FTC has in its possession that would be responsive to the requests for production. In any event, the information is not relevant to the current lawsuit.

6

deceptive and likely to mislead consumers, a court "look[s] to the likely effect the promoter's handiwork will have on the mind of the ordinary consumer." *Id.* (quotations omitted). Every element in a Section 5 claim relates to the conduct of the *defendant* in the lawsuit, not the conduct of other industry participants. Thus, the conduct of other participants in the cyanoacrylate glue industry–the information that Chemence now seeks–has no bearing on the FTC's claim.

Even if Chemence could demonstrate that its competitors had violated the FTC Act but were not prosecuted, that would be irrelevant to the current lawsuit. The FTC "alone is empowered to develop [an] enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." *Moog Indus., Inc. v. FTC*, 355 U.S. 411, 413 (1958); *see also FTC v. Universal-Rundle Corp.*, 387 U.S. 244, 251 (1967) ("[E]ven if a petitioner succeeded in demonstrating that all of its competitors were engaged in illegal [] practices identical to its own, and that enforcement of a cease-and-desist order might cause it financial injury, the commission would not necessarily be obliged to withhold enforcement of the order."). Other courts have rejected the type of "why me" defense that Chemence attempts to raise: "Defendants rely ... on an 'everybody else is doing it' justification. The alleged inaction on the part of the FTC constitutes no more than the Commission's exercise of discretion and judgment in the allocation of agency time and resources and will not form the basis of an equitable estoppel defense." *FTC v. Accusearch, Inc.*, 2007 WL 4356786, at *10 (D. Wyo. Sept. 28, 2007).

Chemence's attempt to show that the information is relevant and necessary because the FTC has "never made rules about the use of 'Made in USA'" claims on products and offers only

7

limited guidance about 'Made in USA' claims" is similarly unavailing. (Chemence Br. in Opp. at 6). According to Chemence, it needs the discovery because, although the FTC has issued guidance in the context of traditional manufacturing, it has not done so with respect to chemical processing. It asserts that, "[w]ithout any formal rule by the FTC, the only documents explaining the factors for the FTC's standard for U.S. origin claims are those related to the FTC's investigations of other cyanoacrylate glue manufacturers." (*Id.* at 6).

Liberally construed, Chemence's argument appears to be that the FTC has failed to give fair notice of the specific standards that the company was required to follow, which it says falls under its affirmative defense that the FTC has failed to state a claim upon which relief may be granted. (Chemence Br. in Opp. at 6-7, n. 8). Chemence, though, has cited no authority for the proposition that confidential business records of other industry participants should or may be used to construe the meaning of an agency rule.

Moreover, its claim that the FTC has provided insufficient guidance on its "Made in the USA" standards is not supported by the record. In 1997, the FTC issued comprehensive guidance on this issue in its Enforcement Policy Statement on U.S. Origin Claims (the "Policy Statement"). FTC, Enforcement Policy Statement on U.S. Origin, *available at* https://www.ftc. gov/public-statements/1997/12/enforcement-policy-statement-us-origin-claims. The Policy Statement explains that "when a marketer makes an unqualified claim that a product is 'Made in USA,' it should, at the time the representation is made, possess and rely upon a reasonable basis that the product is in fact all or virtually all made in the United States." A product meets this standard if "all significant parts and processing that go into the product are of U.S. origin." The final assembly or processing of the product must take place in the United States, and the

8

Commission will consider other factors, such as the portion of the product's total manufacturing costs that are attributable to U.S. parts and processing; and how far removed from the finished product any foreign content is.

The Policy Statement addresses raw materials and states that "raw materials are neither automatically included nor automatically excluded in the evaluation of whether a product is all or virtually all made in the United States. Instead, whether a product whose other parts and processing are of U.S. origin would not be considered all or virtually all made in the United States because the product incorporated imported raw materials depends (as would be the case with any other input) on what percentage of the cost of the product the raw materials constitute and how far removed from the finished product the raw materials are."

Following the Policy Statement, the FTC has continued to provide guidance on U.S. origin claims in the form of informal staff counseling, blog posts, closing letters, and administrative settlements reached in cases where informal staff counseling fails. The FTC compiles this information on its website, and staff attorneys are available to answer questions from companies. *See* https://www.ftc.gov/tips-advice/business-center/advertising-and-marketing/made-in-usa. This website contains detailed information and numerous examples about when "Made in the USA" claims are appropriate and when they are not.

Additionally, the letters that the FTC issued to Gorilla Glue and Toagosei America, which explain how the FTC applies its guidelines to the adhesive products at issue, are publicly available–indeed, Chemence attached them to its brief in opposition. (*See* Chemence Br. in Opp., Exs. 9, 10). In these letters, the FTC explains how it applies its standards regarding raw materials and "substantial transformation" within the United States. Finally, the FTC had many

9

discussions with and sent letters to Chemence during the course of its investigation into Chemence's advertising practices. This correspondence directly analyzed and provided guidance about Chemence's own U.S. origin claims.

Chemence simply has not shown why it is incapable of taking all of the publicly available information from the FTC and articulating reasons why it should be permitted to make unqualified "Made in the USA" claims on its products. Thus, even assuming that the adequacy of FTC guidance is relevant to this dispute, Chemence does not need the confidential and trade secreted information of its direct competitors.

Chemence cites several cases to support its position that the Court should allow discovery of the Intervenors' confidential information subject to a protective order. But the cases it relies on are inapposite because they involved situations where the requested discovery was relevant to the dispute, and the primary concern was the type of restrictions that should be in place for disclosure.[2] But here, the information that Chemence seeks is not relevant to this dispute and Chemence has no need for it. As a result, it is not discoverable. *See, e.g., CACI Field Servs., Inc. v. United States*, 12 Cl Ct. 440 (US Cl. Ct. 1987) (precluding unsuccessful bidder for government contract from discovery of other bidders' confidential information because information was irrelevant since the plaintiff's allegations related to the government's relationship with and treatment of the plaintiff, not its relationship and treatment of other

---

[2]     The FTC's antitrust authority was at issue in the cases that Chemence cites; in each case, the FTC sued to enjoin a merger or acquisition that threatened competition. (*See* Chemence Br. in Opp. at 8-9 and cases cited therein). The market information from third-party competitors was relevant to the FTC's investigation of whether the mergers would be anti-competitive and violate anti-trust law. As discussed above, in a deceptive trade practices case such as the one before this Court, the conduct of other industry participants is not relevant.

bidders).

## **CONCLUSION**

For the foregoing reasons, the Intervenors have established good cause for the Court to issue a protective order requiring that the discovery Chemence seeks in its First Request for Documents Nos. 13, 14, 15, 16, 22, 23, 24, and 25 not be revealed. Non-Party Gorilla Glue Company's Motion for a Protective Order (Doc. 15), Non-Party Toagesei America, Inc.'s Motion for Protective Order (Doc. 28), and Non-Parties Adhesive Systems, Inc. and Royal Adhesives and Sealants LLC's Motion to Protect their Confidential and Trade Secret Information (Doc. 21) are GRANTED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/19/16